IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | COMPLAINT |
| SHIMMICK CORPORATION d/b/a SHIMMICK CONSTRUCTION COMPANY, INC. | ) ) ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on retaliation and to provide appropriate relief for Lindsey M. Potts. Plaintiff Equal Employment Opportunity Commission alleges Defendant Shimmick Corporation d/b/a Shimmick Construction Company, Inc., unlawfully retaliated against Potts by assigning her to the nightshift and terminating her employment, through discharge or constructive discharge, because she participated in an internal investigation and opposed discriminatory practices, all in violation of 42 U.S.C. § 2000e-3(a).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Tennessee, Southern Division.

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission (the Commission) is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant Shimmick Corporation d/b/a Shimmick Construction Company, Inc. (Shimmick) has continuously been doing business in the State of Tennessee and the City of Chattanooga and has continuously employed at least 15 employees.

5. At all relevant times, Shimmick has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. Shimmick is the prime contractor on the United States Army Corps of Engineers Chickamauga Lock Replacement Project in Chattanooga, Tennessee.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Lindsey M. Potts filed a charge with the Commission alleging violations of Title VII by Shimmick.

8. On July 10, 2024, the Commission issued to Shimmick a Letter of Determination finding reasonable cause to believe Shimmick violated Title VII and inviting Shimmick to join the Commission in informal methods of conciliation to endeavor to eliminate unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communications with Shimmick to provide Shimmick the opportunity to remedy the discrimination described in the Letter of Determination.

10. The Commission was unable to secure from Shimmick a conciliation agreement acceptable to the Commission.

11. On July 31, 2024, the Commission issued to Shimmick a Notice of Failure of Conciliation notifying Shimmick the Commission was unable to secure a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### Count I: Reassignment from Day Shift to Night Shift in Retaliation for Participating in an Internal Investigation and Opposing Discriminatory Treatment.

13. Since on or about August 20, 2021, Shimmick engaged in unlawful employment practices at its Chickamauga Lock Replacement Project worksite in Chattanooga, Tennessee (Chickamauga Project), in violation of Section 703(a) and 704(a) of Title VII, 42 U.S.C. § 2000e-2(a) and 3(a).

14. The unlawful employment practices include retaliating against Potts by reassigning Potts from the day shift to the night shift because she participated in an internal investigation and opposed discriminatory treatment at the Chickamauga Lock Replacement Project worksite in Chattanooga.

15. On or about September 18, 2019, Potts began working for Shimmick as an Operating Engineer at the Chickamauga Lock Replacement Project in Chattanooga, TN.

16. Potts was one of the few women employed at this male-dominated worksite.

17. Potts consistently performed her duties at an exemplary level and received several promotions.

18. On or about September 20, 2020, Shimmick promoted Potts, who had been an employee for just over one year, to the position of Acting General Foreman.

19. Shimmick promoted Potts to Acting General Foreman following the departure of Walter Soriano (Soriano), Potts' fiancé.

20. Despite Potts' high performance and promotion to Acting General Foreman, Shimmick did not officially change Potts job title or adjust her pay accordingly, leaving her without proper recognition of her expanded duties.

21. As Acting General Foreman, Potts was responsible for overseeing crane operations and coordinating lifts, leveraging her full range of qualifications as a certified crane operator.

22. Despite her high performance in a leadership position, Potts was subjected to sex-based mistreatment, including insubordination, gender-based slurs, and disrespect from her male colleagues.

23. On or about July 13, 2021, Soriano filed a complaint with Shimmick's internal hotline on behalf of Potts, reporting pervasive sex-based mistreatment she had endured at the Chickamauga Project worksite.

24. Soriano's complaint identified specific individuals, including Operating Engineer Christopher Burkhardt, Superintendent Daniel Lisella, and Director of Equipment Operations Steve Frazier, as key figures who engaged in and tolerated the sex-based mistreatment of Potts.

25. Soriano's complaint detailed numerous incidents of sex-based mistreatment, including male employees cursing at Potts, refusing to follow her instructions, and using gender-based slurs, including calling her a "fucking cunt."

26. Shimmick initiated an internal investigation into Soriano's complaint, interviewing Potts, Director Frazier, and Superintendent Lisella.

27. Potts cooperated fully with the investigation and confirmed the sex-based mistreatment she endured, identifying Director Frazier and Superintendent Lisella as participants in or enablers of the discriminatory treatment.

28. On or about July 22, 2021, Shimmick concluded its investigation and substantiated the complaint regarding behavior inconsistent with its policies on mutual respect.

29. Shimmick responded to the results of the investigation by issuing minimal corrective actions.

30. Shimmick's response consisted of reprimanding Mr. Burkhardt for insubordination and counseling Superintendent Lisella and Director Frazier on their responsibilities under the company's "Diverse and Inclusive Workplace" policy, without any further meaningful corrective measures.

31. Shimmick's response failed to address the root causes of the mistreatment Potts endured.

32. Instead, the situation worsened, with her supervisors and coworkers deepening their hostility toward her.

33. Following the complaint, Superintendent Lisella confronted Potts about naming him in the complaint, questioning her loyalty and isolating her from important meetings and decision-making processes.

34. Other employees at the Chickamauga Project, aware of the complaint, began referring to Potts as a "snitch" and further ostracized her, making her workplace even more intolerable.

5

35. On or about August 16, 2021, less than a month after Soriano filed his complaint with Shimmick's internal hotline, Superintendent Lisella and Director Frazier assigned Potts to the nightshift.

36. Superintendent Lisella and Director Frazier knew the reassignment would create a significant personal hardship for Potts as a single mother.

37. Before August 16, 2021, Superintendent Lisella and Director Frazier had never assigned Potts nor her predecessor, Soriano, to the nightshift.

38. Superintendent Lisella was fully aware of Potts' caretaking responsibilities and the severe impact the nightshift would have on her ability to care for her children, as she had communicated these challenges to him.

39. The dayshift at the Chickamauga Project ran from 6:00 AM to 4:30 PM, while the nightshift ran from 7:00 PM to 3:30 AM, creating a direct conflict with Potts' family obligations.

40. Employees assigned to the nightshift worked fewer hours and received less pay than those on the dayshift, further disadvantaging Potts financially.

41. Upon receiving the nightshift assignment, Potts reminded Superintendent Lisella of her family responsibilities and the difficulty of fulfilling her duties under the nightshift schedule.

42. Despite knowledge of Potts family responsibilities, fewer hours, and less pay, Superintendent insisted on reassigning Potts from the day shift to the night shift.

43. The effect of the paragraphs complained of in the paragraphs above has been to deprive Ms. Potts of equal employment opportunities and otherwise adversely affect her status as an employee because she participated in an internal investigation and opposed discriminatory practices.

44. The unlawful employment practices complained of in the paragraphs above were intentional.

45. The unlawful employment practices complained of in the paragraphs above were done with malice or with reckless indifference to Potts' federally protected rights.

Count II: Constructive Discharge/Discharge

46. The unlawful employment practices also include constructive discharge/discharge of Potts.

47. The Commission repeats verbatim herein paragraphs 14-42.

48. As a direct result of the investigation, Shimmick required Superintendent Lisella to hold a workplace meeting to address the company's "Diverse and Inclusive Workplace" policy and emphasize respectful behavior at the Chickamauga Project.

49. On or about August 20, 2021, Superintendent Lisella held a meeting with staff and distributed the policy in response to the internal investigation into the sex-based mistreatment of Potts.

50. Late evening, on or about August 20, 2021, after most employees had left the worksite, Superintendent Lisella approached Potts and privately issued an ultimatum: either agree to work the nightshift or turn in her keys and leave.

51. Superintendent Lisella's demand for an immediate decision, at the end of the workday on a Friday, gave Potts no time to negotiate or explore alternative solutions, pressuring her into deciding on the spot.

52. Despite her pleas to keep her job and reminders of her caretaking responsibilities, Superintendent Lisella remained inflexible and demanded an immediate response.

53. Employees were available to cover the nightshift, but Superintendent Lisella and Director Frazier chose to assign Potts instead.

54. Before assigning Potts to the nightshift, Shimmick reassigned Davis Scott Quarles, an employee without children, from the nightshift to the dayshift.

55. Under immense pressure with no time to negotiate alternate arrangements, Potts was left with no choice but to relinquish her keys and leave the job site.

56. Believing she had been discharged, Potts turned in her keys and left the job site on August 20, 2021, as instructed by Superintendent Lisella.

57. After her departure, Potts received conflicting separation notices from Shimmick, initially stating she had been laid off due to a reduction in force.

58. A subsequent notice stated Potts voluntarily resigned by refusing the nightshift assignment.

59. Potts consistently performed her job duties at a high level as a Shimmick employee, without receiving any disciplinary actions or negative performance reviews.

60. Potts' assignment to the nightshift and departure, whether characterized as a discharge or constructive discharge, directly resulted from Potts' opposition to sex-based discrimination and her participation in Shimmick's internal investigation.

61. The effect of the paragraphs complained of in the paragraphs above has been to deprive Ms. Potts of equal employment opportunities and otherwise adversely affect her status as an employee because she participated in an internal investigation and opposed discriminatory practices.

62. The unlawful employment practices complained of in the paragraphs above were intentional.

63. The unlawful employment practices complained of in the paragraphs above were done with malice or with reckless indifference to Potts' federally protected rights.

## PRAYER FOR RELIEF

A. Grant a permanent injunction enjoining Shimmick, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in unlawful retaliation.

B. Order Shimmick to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals who engage in a protected activity, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Shimmick make whole Lindsey M. Potts by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place hiring or reinstatement of Lindsey M. Potts, or an award of front pay.

D. Order Shimmick to make whole Lindsey M. Potts by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E. Order Shimmick to make whole Lindsey M. Potts by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Shimmick to pay Lindsey M. Potts punitive damages for its malicious and reckless conduct in amounts to be determined at trial.

G. Award the Commission its costs of this action.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

    KARLA GILBRIDE
    General Counsel

    CHRISTOPHER LAGE
    Deputy General Counsel

    /s/ Faye A. Williams
    FAYE A. WILLIAMS
    Regional Attorney
    TN Bar No. 011730
    faye.williams@eeoc.gov

    EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
    Memphis District Office
    200 Jefferson Avenue, Suite 1400
    Memphis, TN 38103
    (901) 685-4609

    RAQUEL A. CATO
    Trial Attorney
    TN Bar No. 040675
    raquel.cato@eeoc.gov

    MARCERIOUS D. KNOX
    Trial Attorney
    TN Bar No. 036851
    marcerious.knox@eeoc.gov

    EQUAL EMPLOYMENT
    OPPORUTNITY COMMISSION
    Nashville Area Office
    220 Athens Way, Suite 350
    Nashville, TN 37228
    (615) 736-5784